**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION**

| | | |
|---|---|---|
| **J. S. HAREN COMPANY,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **Case No. _____** |
| | ) | |
| **SMITH & LOVELESS, INC.** | ) | |
| | ) | |
| **Defendant** | ) | |

## **COMPLAINT**

COMES the Plaintiff, J. S. Haren Company, by and through its counsel, JAMES D. LAWSON, P.C., and for its cause of action against the Defendant, Smith & Loveless, Inc., alleges and states:

1.      Plaintiff, J. S. Haren Company, is a Tennessee corporation with its principal place of business located in Athens, McMinn County, Tennessee.   For purposes of diversity of citizenship, Plaintiff is a citizen of the State of Tennessee.

2.      Defendant, Smith & Loveless, Inc., is a Kansas corporation with its principal place of business located in Lenexa, Johnson County, Kansas.  Defendant's registered agent for service of process is Lanette M. Wickham, 14040 Santa Fe Trail Drive, Lenexa, Kansas 66215.  For purposes of diversity of citizenship, Defendant is a citizen of the State of Kansas.

3.      This cause of action arises from the sale and purchase of goods for inclusion in a construction project located in the City of Bridgeport, Jackson County, Alabama.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      This Court has jurisdiction over the parties hereto and the subject matter hereof, by virtue of 28 U.S.C. § 1332(a)(1) and Tenn. Code Ann. § 20-2-214(a) (the Tennessee Long-Arm Statute).  Venue is properly laid in the Chattanooga Division of the Eastern District of Tennessee by virtue of 28 U.S.C. § 1391(b)(2) and (b)(3).

## FACTS

5.      Plaintiff restates, realleges, and incorporates herein by reference the statements and allegations described in paragraphs no. 1-4, above.

6.      Plaintiff is the general contractor on a construction project owned by the City of Bridgeport, Alabama, for the construction of the Widows Creek Pump Station, a wastewater treatment pump station located in Bridgeport, Alabama (hereinafter referred to as the "Project").

7.      As part of its due diligence in formulating its bid to be awarded the Project, Plaintiff was required to order certain materials and equipment that were to conform to certain specifications called for in Plaintiff's contract with the Project owner.  Among the items required for the Project were an automatic pumping station with all needed equipment (the "Goods"), more particularly described and set forth in the document attached hereto and incorporated herein as Exhibit "1".

8.      Upon learning of the Project, Defendant, which purports and holds itself out to be a leading manufacturer of goods such as those described in Exhibit "1", had its authorized representative contact Plaintiff and submit its proposal to sell the Goods to Plaintiff at a total cost of $396,500.00.

9.　　After the material terms of the transaction were agreed upon, Defendant sent directly to Plaintiff at Plaintiff's business location in Athens, Tennessee a Sales Agreement (Exhibit "1"). The Sales Agreement was based upon Defendant's quote to Plaintiff dated April 30, 2018, and Plaintiff received it from Defendant a few days after that date.　Plaintiff reviewed the Sales Agreement, made certain specific revisions to it, and signed the Sales Agreement with said revisions on May 11, 2018.　The representative signing on behalf of Plaintiff was J.S. Haren, President and CEO of Plaintiff, and his signature clearly specified that he was agreeing to the Sales Agreement, "as amended."

10.　　The final amendment to the Sales Agreement was an addition that was incorporated by J.S. Haren which read, "This Agreement is binding providing properly executed Agreement is received by buyer on or before Tuesday, May 15, 2018.　JSH".　Plaintiff sent the signed Sales Agreement back to Defendant, which received it that same date, as evidenced by its date stamp on Exhibit "1".

11.　　The Sales Agreement, as amended, was not signed by an authorized representative of Defendant until June 21, 2018, and was not returned to Plaintiff until June 27, 2018.　In reliance upon the material terms of the Sales Agreement that had been agreed to, however, Plaintiff had already included Defendant's pricing for the Goods in its bid to be general contractor for the Project.

12.　　Plaintiff was awarded the contract to be the general contractor for the Project, thus binding Defendant to supply the Goods at the price agreed upon, in conformance with the plans and specifications required by the Project documents, and warranted to function properly and as represented in the Sales Agreement.

13.     Based upon the Project schedule, to which Defendant had agreed, Defendant was to provide submittal data within four to five weeks, and was to complete manufacture of the Goods within twenty to twenty-two weeks of submittal approval.  Thus, Defendant committed to provide the Goods to Plaintiff no later than November 21, 2018.

14.     Defendant confirmed it would meet the delivery date on more than one occasion during the summer of 2018 and acknowledged the need and its obligation to provide the Goods to Plaintiff in a timely manner.

15.     On September 20, 2018, at Defendant's request, a Change Order was issued to allow factory witness testing of the Goods.

16.     On November 6, 2018, fifteen days before the Goods were to be provided to Plaintiff, the Project engineer expressed concern over the factory witness test and resulting potential delays to the Project.

17.     The following day, November 7, 2018, Defendant's representative notified Plaintiff that the Goods would not ship to the Project site until at least December 14, 2018.  Plaintiff contacted Defendant periodically between November 7, 2018 and December 11, 2018 to confirm that the Goods would in fact be shipped by December 14, 2018.

18.     On December 11, 2018, Defendant contacted Plaintiff in writing and stated that the Goods would not be shipped until most likely the week of Christmas.  As a result of receiving this information, the following day Plaintiff placed Defendant on notice of the delay costs that were being incurred, and Defendant's responsibility for the resulting damages being charged to Plaintiff.  This was reiterated to Defendant by the Project engineer in writing on December 21, 2018.

19.     After additional correspondence over the next week, the Goods were delivered to the Project site on December 31, 2018, and the Goods were immediately scheduled for installation on January 2, 2019.  However, upon inspection, it was discovered that the Good had not been equipped with a permanent 150 horsepower motor as required by the specifications, but instead had been delivered with some spare used 200 horsepower motors.

20.     On January 29, 2019, still without the correct permanent motor but with assurances from Defendant that the 200 horsepower motors would function properly, installation of the Goods and start-up of the Pump Station was accomplished by Plaintiff.  However, approximately seventeen (17) days later, pump seals failed, resulting in the Pump Station flooding.

21.     The flooding of the Pump Station necessitated over one month of cleanup, repairs and renovations, including the mobilization of a crane, re-setting of a temporary pump, and reworking of the 200 horsepower motor provided by Defendant.

22.     On or about May 11, 2019, Defendant provided Plaintiff with the new, correct 150 horsepower motor that had been called for in the Project specs.  Plaintiff began installation of the new motor on May 21, 2019, but discovered that the impeller in the pump had failed and damaged itself.  Temporary pump motors had to once again be used, and a new impeller for the 150 horsepower motor was ordered.

23.     The week of June 24, 2019, the new impeller for the motor arrived at the Project site.  Upon commencing installation once again, it was discovered that the impeller in the motor had failed yet again, resulting in broken bolts in the shaft of the new motor.  At the time of filing of this lawsuit, the new motor has still not been repaired or a suitable substitute provided by Defendant.

24.     At no time during construction of the Project has the Pump Station purchased by Plaintiff from Defendant worked properly, performed as intended or warranted.  As a result, the Pump Station is still not in proper operation and the Project continues to be delayed.

<u>**COUNT ONE**</u>
<u>**BREACH OF EXPRESS CONTRACT**</u>

25.     Plaintiff restates, realleges and incorporates herein by reference the statements and allegations described in paragraphs no. 1-24, above.

26.     Defendant breached the written Sales Agreement with Plaintiff by failing to supply Goods in conformance with the Sales Agreement, the plans and specifications for the Project, and the approved submittals.

27.     Defendant has breached the written Sales Agreement with Plaintiff by failing and refusing to correct the deficiencies and non-conformance of the Goods, despite being given reasonable and adequate opportunity to do so.

28.     Defendant has breached the written Sales Agreement with Plaintiff by failing and refusing to adhere to the construction schedule for the Project and the deadlines for providing the Goods to Plaintiff, resulting in Project delays and liquidated damages being assessed against Plaintiff.

29.     Plaintiff has been damaged as a result of Defendant's breach of the written Sales Agreement, and is entitled to recover damages from Defendant in the amounts set forth hereinbelow.

## COUNT TWO
## BREACH OF EXPRESS WARRANTIES

30.     Plaintiff restates, realleges and incorporates herein by reference the statements and allegations described in paragraphs 1-29, above.

31.     Defendant expressly warranted that the Goods would be in complete and full conformance with the Sales Agreement, the plans and specifications for the Project, and the approved submittals. A Certificate of Warranty was provided by Defendant to Plaintiff at the time of purchase of the Goods, so stating.

32.     The Goods provided by the Defendant pursuant to the written Sales Agreement were deficient in several respects, most notably the provision of an incorrect motor, constituting a breach of the express warranties given by Defendant to provide Goods in complete and full conformance.

33.     The Plaintiff has been damaged by the breach of express warranties by Defendant, and Plaintiff is entitled to recover damages from Defendant in the amounts set forth hereinbelow.

## COUNT THREE
## BREACH OF IMPLIED WARRANTIES

34.     Plaintiff restates, realleges and incorporates herein by reference the statements and allegations described in paragraphs no. 1-33, above.

35.     By entering into the written Sales Agreement with Plaintiff, Defendant impliedly warranted that the Goods would be merchantable, and also that the Goods would be fit for their particular purpose.

36.     The non-conforming and improperly functioning motors were neither merchantable or fit for the particular purpose, of which Defendant was fully aware. The Goods are of no value to Plaintiff as they cannot be used for any purpose for the Project.

37.     Defendant has breached its implied warranties to Plaintiff to provide merchantable goods, and goods that are fit for the particular purpose for which they were purchased.

38.     Plaintiff has been damaged by the breach of the implied warranties of merchantability and fitness for particular purpose by Defendant, and Plaintiff is entitled to recover damages from Defendant in the amounts set forth hereinbelow.

## COUNT FOUR
## BREACH OF IMPLIED CONTRACT

39.     Plaintiff restates, realleges and incorporates herein by reference the statements and allegations described in paragraphs no. 1-38, above.

40.     Alternatively, Defendant failed to execute the written Sales Agreement within the time contained in the amendment included by Plaintiff when Plaintiff executed the written Sales Agreement.  As such, the terms and provisions of Exhibit "1" are binding only to the extent that they were followed by the parties through their course of dealing.

41.     Among the terms of the implied contract that the parties have followed are those pertaining to price to be paid by Plaintiff, the specifications of the Goods to be sold and provided by Defendant, and the schedule by which the conforming Goods were to be provided.

42.     Defendant has breached the terms of any implied contract that existed between the parties by failing to provide Goods that conformed to specifications, and by failing to provide Goods in accordance with the Project schedule.

43.     Defendant's breaches of the implied contract have resulted in damages to Plaintiff, and Plaintiff is entitled to recover damages from Defendant in the amounts set forth hereinbelow.

## COUNT FIVE
## REVOCATION OF ACCEPTANCE

44.     Plaintiff restates, realleges and incorporates herein by reference the statements and allegations described in paragraphs 1-43, above.

45.     Because the Goods sold to Plaintiff by Defendant were non-conforming, and the non-conformity substantially impaired its value to Plaintiff, Plaintiff gives notice that it has revoked its acceptance of the Goods, and as is its right will make arrangements to purchase substitute Goods that do conform with the written Sales Agreement, and the plans and specifications for the Project.

46.     Defendant was given reasonable and adequate opportunity to cure the non-conformity, but failed and refused to do so.

47.     Upon revoking its acceptance of the Goods, Plaintiff is entitled to recover damages in the amounts set forth hereinbelow.

## DAMAGES

48.     Plaintiff restates, realleges and incorporates herein by reference the statements and allegations described in paragraphs no. 1-47, above.

49.     Plaintiff is entitled to return from Defendant of the sum of $296,500.00, representing the amount paid by Plaintiff to date for non-conforming Goods.

50.     Plaintiff is entitled to recover an additional sum of $100,000.00 from Defendant, representing the cost of repairs necessitated to date.

51.     Plaintiff is entitled to recover an additional sum, as yet undetermined, as the cost of cover, representing the difference between the amount agreed to be paid for the non-conforming Goods sold by Defendant and the amount Plaintiff will have to pay another vendor for Goods that are conforming.

52.     Plaintiff is entitled to recover consequential damages from Defendant, representing liquidated damages, engineering costs caused by delay, and associated other costs caused by delay and by the need to install an entirely new Pump Station, and it is anticipated that said consequential damages will exceed $1,000,000.00.

53.     Plaintiff is entitled to pre-judgment interest on all of these sums, at the legal rate.

**WHEREFORE**, premises considered, the Plaintiff, J.S. Haren Company, prays for judgment from and against the Defendant, Smith & Loveless, Inc., in an amount to be proven at trial, but exceeding the amount necessary for Federal Court jurisdiction in diversity of citizenship cases, with interest thereon at the legal rate until paid, for recovery of its costs and attorneys' fees herein, and for all other just and proper relief.

**JAMES D. LAWSON, P.C.**
10094 Ridgewood Oak Drive
Lakeland, Tennessee  38002
(901) 201-9668 (Telephone)
jimmy@hamlindispute.com


By:   /s/  James D. Lawson
      James D. Lawson, Esq.
      TN BPR# 024211
      Attorney for the Plaintiff,
      J.S. Haren Company